**STATE OF RHODE ISLAND** **SUPERIOR COURT**
**PROVIDENCE, SC.**

**NATIONAL GLASS & GATE :**
**SERVICE, INC. d/b/a :**
**NG&G FACILITY SERVICES :**
**INTERNATIONAL, INC. :**
**Plaintiff :**
**:**
**v. : C.A. NO:** 08-3158
**:**
**SERVICE EVERYWHERE, L.L.C. :**
**Defendant :**

# COMPLAINT

Plaintiff National Glass & Gate Service, Inc. d/b/a NG&G Facility Services International, Inc. ("NG&G"), brings this action against Defendant Service Everywhere, L.L.C. ("Service Everywhere") and alleges as follows:

## PARTIES

1. NG&G is a Rhode Island corporation with its principal place of business at 263 Jenckes Hill Road, Lincoln, Rhode Island.

2. Defendant Service Everywhere is a Delaware corporation with its principal place of business in Houston, Texas.

## JURISDICTION AND VENUE

3. This Court has personal jurisdiction over Service Everywhere because, among other things, this matter relates to contracts entered into between Service Everywhere and NG&G in Rhode Island for services to be provided by NG&G in Rhode Island for Service Everywhere. In addition, this action involves, in part, funds being held in Rhode Island pursuant to the agreement of the parties.

Received 4-25-08 LSb

4. This Court has subject matter jurisdiction over this action because the amount in controversy exceeds the statutory amount.

5. Venue for this action is proper because Plaintiff's principal place of business is in Rhode Island.

**FACTS**

6. NG&G is engaged in the business of providing facilities maintenance and repair services for its customers.

7. Upon information and belief, Service Everywhere is a contractor that has service agreements with certain property owners and their management agents ("Owners") to perform call center support and provide related services for maintenance and repair of the Owners' properties. The Owners under agreement with Service Everywhere include Bank of America and Washington Mutual Bank, S.A.

8. In 2002, NG&G and Service Everywhere entered into a contract pursuant to which NG&G agreed to provide on behalf of Service Everywhere virtually all services required of Service Everywhere by its contract with Washington Mutual. The services NG&G agreed to provide include receiving the property owner's request for service at NG&G's Rhode Island call center, dispatching its contracted vendors to perform the work, and paying vendors for the services performed.

9. In 2004, NG&G and Service Everywhere entered into a similar contract for NG&G to provide the same services to support Service Everywhere in its contract with Bank of America.

10. NG&G also has performed similar services for Service Everywhere in connection with other Owners pursuant to other service agreements. As used herein, the

term "Service Agreements" refers collectively to the contracts and service agreements identified in this and the preceding two paragraphs.

11. At all times relevant to this action, the Service Agreements and practice between the parties provided that Service Everywhere and NG&G would split the profits on work provided by NG&G on a 51/49 basis after payment of the vendors NG&G contracted with to perform the work. Service Everywhere would receive 51% of the amount collected from the Owners after deducting applicable vendor costs ("Service Everywhere Profit Interest"), and the remaining 49% of the profit would be disbursed to NG&G by Service Everywhere upon collection of payments from the Owners.

12. Pursuant to their Service Agreements and practice, after a job was completed by NG&G for an Owner, NG&G would submit an invoice to Service Everywhere for the cost of the work performed by the NG&G vendor together with an agreed upon profit mark-up to be shared by Service Everywhere and NG&G pursuant to the agreed upon profit split. Service Everywhere then would issue an invoice to the Owner in the amount indicated by NG&G's invoice. Once Service Everywhere received payment from the Owner, it was obligated to disburse to NG&G all funds collected other than the Service Everywhere Profit Interest. NG&G was responsible for paying the vendors who performed the work.

13. Between 2002 and 2006 there were many instances in which Service Everywhere made late disbursements to NG&G or failed to generate records required by the Service Agreements. NG&G was patient and did its best to accommodate Service Everywhere.

14. In 2007 the delays in Service Everywhere's disbursements increased. Service Everywhere told NG&G that the delays were due to cash flow problems that Service Everywhere was experiencing.

15. NG&G continued to accommodate Service Everywhere by, among other things, agreeing in certain cases to extend Service Everywhere's time to make disbursements. These accommodations created a hardship for NG&G because NG&G, not Service Everywhere, bore the costs associated with the work performed for the Owners. On the other hand, Service Everywhere benefited from retaining, for a longer period, 100% of collections, even though it was only entitled contractually to retain the Service Everywhere Profit Interest.

16. Despite NG&G's accommodations to Service Everywhere, the delays in disbursements continued, and a substantial receivable developed. At the same time, NG&G was out of pocket the substantial amounts it paid to vendors for the work performed.

17. Ultimately, NG&G threatened to terminate the Service Agreements and demanded full payment of the outstanding disbursements. In response, Service Everywhere, for the first time and in an apparent effort to manufacture a basis for further delays, began requesting documentation and imposing other unjustified conditions before it would disburse funds to NG&G.

18. For these reasons and others, NG&G terminated its Service Agreements with Service Everywhere effective February 27, 2008. At that point, NG&G had submitted invoices of approximately $1,500,000 to Service Everywhere that were outstanding.

19. Upon information and belief, Service Everywhere had at that time or shortly thereafter billed the Owners for those invoices and subsequently collected from the Owners most if not all of the amounts invoiced. Rather than disburse the amounts due to NG&G on those collections, Service Everywhere retained not only its Profit Interest, but also NG&G's profit share and the amounts needed to pay the vendors who performed the work.

20. NG&G and Service Everywhere continued to discuss the outstanding disbursements due to NG&G. NG&G became increasingly concerned that Service Everywhere was experiencing financial issues and that funds due and owing to NG&G and its vendors were being diverted to other purposes.

21. In early 2008, NG&G proposed that while the parties worked to resolve their issues, Service Everywhere place in escrow all amounts collected from Owners on NG&G work less the Service Everywhere Profit Interest. NG&G made this proposal to ensure that the funds (1) would not be diverted or misapplied by Service Everywhere and (2) would be beyond the reach of Service Everywhere's creditors. The proposal was both reasonable and fair because Service Everywhere was not entitled to retain amounts beyond the Service Everywhere Profit Interest.

22. In or about March 2008 NG&G and Service Everywhere reached an agreement (the "2008 Agreement") that Service Everywhere would provide weekly reports of collections on outstanding invoices from Owners and that Service Everywhere would make weekly wires of the amounts collected less the Service Everywhere Profit Interest to a client funds account maintained by NG&G's counsel (the "Designated Account"). According to the parties' agreement, NG&G would be entitled to the funds in

the Designated Account upon providing certain documentation to Service Everywhere, including confirmation that NG&G paid the vendors who provided the work associated with the collections.

23. Service Everywhere made four wires totaling $635,936.57 into the Designated Account pursuant to the 2008 Agreement. The last wire was made by Service Everywhere on April 2, 2008.

24. As of the date of this filing, the last report provided by Service Everywhere to NG&G reflected that Service Everywhere has made collections from Owners through March 31, 2008 of approximately $1.4 Million on work subject to the Service Agreements and the 2008 Agreement. Notwithstanding these collections, Service Everywhere has only placed $635,936.57 into the Designated Account. Upon information and belief, other amounts subject to the parties' Service Agreements and 2008 Agreement have been collected by Service Everywhere.

25. NG&G has provided Service Everywhere with confirmation of vendor payments and other required documentation relating to the entire amount currently held in the Designated Account. Accordingly, NG&G is entitled to immediate release of the funds in that account.

## COUNT ONE

**(Breach of Contract – Service Agreements)**

26. NG&G repeats and realleges the allegations contained in Paragraphs 1 through 25 of this Complaint as if fully set forth herein.

27. NG&G and Service Everywhere entered into two written contracts and numerous other contracts, the Service Agreements.

28. Pursuant to the terms of the Service Agreements, NG&G provided various services on behalf of Service Everywhere to the Owners. In exchange, Service Everywhere agreed to disburse to NG&G all monies collected from the Owners for the services provided less the Service Everywhere Profit Interest.

29. Service Everywhere has collected payments from the Owners that are subject to its Service Agreements with NG&G, yet Service Everywhere has not disbursed any proceeds of those collections to NG&G.

30. Service Everywhere has breached its Service Agreements with NG&G by failing to disburse proceeds of its collections for work performed by NG&G and its vendors.

31. NG&G has been damaged as a direct and proximate result of Service Everywhere's breach of the Service Agreement.

**COUNT TWO**

**(Breach of Contract – 2008 Agreement)**

32. NG&G repeats and realleges the allegations contained in Paragraphs 1 through 31 of this Complaint as if fully set forth herein.

33. In 2008, NG&G and Service Everywhere entered into the 2008 Agreement pursuant to which Service Everywhere was to deposit into the Designated Account all amounts collected from the Owners on work subject to the Service Agreements less the Service Everywhere Profit Interest.

34. Although Service Everywhere admits to having collected approximately $1.4 million from its customers as of March 31, 2008 that is subject to the 2008 Agreement, it only has deposited $635,936.51 into the Designated Account. Its failure to

deposit the appropriate amount from its remaining collections constitutes a breach of the 2008 Agreement.

35. NG&G has been damaged as a direct and proximate result of Service Everywhere's breach of the 2008 Agreement.

**COUNT THREE**

**(Unjust Enrichment)**

36. NG&G repeats and realleges the allegations contained in Paragraphs 1 through 35 of this Complaint as if fully set forth herein.

37. Pursuant to the parties' Service Agreements and practice, NG&G was entitled to receive disbursements of all amounts collected by Service Everywhere from the Owners for work performed by NG&G after Service Everywhere deducted its Service Everywhere Profit Interest.

38. Service Everywhere has received payments from Owners for work performed by NG&G but has failed to make the disbursements required by the Service Agreements.

39. As a result of its failure to disburse amounts due to NG&G for services performed, Service Everywhere has been unjustly enriched.

40. Service Everywhere also has been unjustly enriched as a result of its failure to wire its collections, less the Service Everywhere Profit Interest, into the Designated Account pursuant to the parties' 2008 Agreement.

41. NG&G has been damaged as a direct and approximate result of Service Everywhere's actions.

WHEREFORE, NG&G respectfully requests that this Court:

1. Enter a judgment in favor of NG&G on all counts of the Complaint;

2. Require Service Everywhere to provide a full accounting of all amounts billed to and received from Owners in connection with work performed by NG&G for which Service Everywhere has not disbursed all collected amounts (less the Service Everywhere Profit Interest) to NG&G;

3. Award damages in an amount to compensate NG&G;

4. Award pre- and post-judgment interest on damages caused by Defendant's conduct;

5. Award Plaintiff its costs and attorneys fees pursuant to the parties' contracts, pursuant to R.I. Gen. L. §9-1-44 and applicable Law; and

6. Award Plaintiff such other and further relief as the Court deems just and proper.

**PLAINTIFF HEREBY DEMANDS THAT THIS MATTER BE TRIED BEFORE A JURY.**

**PLAINTIFF**

**NATIONAL GLASS & GATE SERVICE, INC.**

By_______________________

Stacey P. Nakasian (#5069)
snakasian@duffysweeney.com
Duffy Sweeney & Scott, Ltd.
One Turks Head Place, Suite 1200
Providence, RI 02903
(401) 455-0700 – Phone
(401) 455-0701 – Fax

Dated: April 25, 2008