**STATE OF RHODE ISLAND**
**PROVIDENCE, SC.**

**SUPERIOR COURT**

**NATIONAL GLASS & GATE SERVICE, INC. d/b/a NG&G FACILITY SERVICES INTERNATIONAL, INC.**
**Plaintiff**

**v.**

**SERVICE EVERYWHERE, L.L.C.**
**Defendant**

**C.A. NO: 08-3158**

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER**

Plaintiff National Glass & Gate Service, Inc. d/b/a NG&G Facility Services International, Inc. ("NG&G"), submits this memorandum in support of its Motion for Temporary Restraining Order. NG&G seeks a temporary retraining order because Service Everywhere, L.L.C. ("Service Everywhere") is experiencing cash flow problems and other financial difficulties. NG&G has good reason to believe that, unless the relief sought is granted, Service Everywhere will not have funds available to pay a judgment in this case. The proposed restraining order would enforce an escrow agreement formed by the parties earlier this year and, therefore, will maintain the status quo until such time as the Court can hear this case on its merits. No prejudice will befall Service Everywhere if the restraining order is imposed, as the Order would only require that it escrow amounts due to NG&G; Service Everywhere would retain its profit share on collections.

True Copy Attest
Office of Clerk of Superior Court
Counties of Providence & Bristol
Providence, Rhode Island

SUPERIOR COURT
FILED
HENRY S. KINCH JR., CLERK
2008 MAY 13 A 9: 02

16b

## FACTS[1]

NG&G is engaged in the business of providing facilities maintenance and repair services for its customers. Defendant Service Everywhere, L.L.C. ("Service Everywhere") is a contractor that has service agreements with certain property owners and their management agents ("Owners") to perform call center support and provide related services for maintenance and repair of the Owners' properties. The Owners under agreement with Service Everywhere include Bank of America and Washington Mutual Bank, S.A.

In 2002, NG&G and Service Everywhere entered into a contract pursuant to which NG&G agreed to provide on behalf of Service Everywhere virtually all services required of Service Everywhere by its contract with Washington Mutual. The services NG&G agreed to provide include receiving the property owner's request for service at NG&G's Rhode Island call center, dispatching its contracted vendors to perform the work, and paying vendors for the services performed. In 2004, NG&G and Service Everywhere entered into a similar contract for NG&G to provide the same services to support Service Everywhere in its contract with Bank of America. NG&G also has performed similar services for Service Everywhere in connection with other Owners pursuant to other service agreements. As used herein, the term "Service Agreements" refers collectively to the contracts and service agreements between Service Everywhere and the Owners.

At all times relevant to this action, the Service Agreements and practice between the parties provided that Service Everywhere and NG&G would split the profits on work

True Copy Attest
Office of Clerk of Superior Court
Counties of Providence & Bristol
Providence, Rhode Island

---

[1] The Facts set forth in this Memorandum are contained in the Complaint which has been verified in the Affidavit of Charles Vachon filed herewith.

provided by NG&G on a 51/49 basis after payment of the vendors NG&G contracted with to perform the work. Service Everywhere would receive 51% of the amount collected from the Owners after deducting applicable vendor costs ("Service Everywhere Profit Interest"), and the remaining 49% of the profit would be disbursed to NG&G by Service Everywhere upon collection of payments from the Owners.

Pursuant to their Service Agreements and practice, after a job was completed by NG&G for an Owner, NG&G would submit an invoice to Service Everywhere for the cost of the work performed by the NG&G vendor together with an agreed upon profit mark-up to be shared by Service Everywhere and NG&G pursuant to the agreed upon profit split. Service Everywhere then would issue an invoice to the Owner in the amount indicated by NG&G's invoice. Once Service Everywhere received payment from the Owner, it was obligated to disburse to NG&G the net payment received from the Owner – that is, the total payment received less the Service Everywhere Profit Interest (referred to herein as "Net Payment"). NG&G was responsible for paying the vendors who performed the work.

Between 2002 and 2006 there were many instances in which Service Everywhere made late disbursements of Net Payments to NG&G or failed to generate records required by the Service Agreements. NG&G was patient and did its best to accommodate Service Everywhere. In 2007 the delays in Service Everywhere's disbursements increased. Service Everywhere told NG&G that the delays were due to cash flow problems that Service Everywhere was experiencing.

NG&G continued to accommodate Service Everywhere by, among other things, agreeing in certain cases to extend Service Everywhere's time to make disbursements of

True Copy Attest
Office of Clerk of Superior Court
Counties of Providence & Bristol
Providence, Rhode Island

Net Payments. These accommodations created a hardship for NG&G because NG&G, not Service Everywhere, bore the costs associated with the work performed for the Owners. On the other hand, Service Everywhere benefited from retaining, for a longer period, 100% of collections, even though it was only entitled contractually to retain the Service Everywhere Profit Interest.

Despite NG&G's accommodations to Service Everywhere, the delays in Net Payment disbursements continued, and a substantial receivable developed. At the same time, NG&G was out of pocket the substantial amounts it paid to vendors for the work performed. Ultimately, NG&G threatened to terminate the Service Agreements and demanded full payment of the outstanding Net Payments due to NG&G. In response, Service Everywhere, for the first time and in an apparent effort to manufacture a basis for further delays, began requesting documentation and imposing other unjustified conditions before it would disburse Net Payments to NG&G.

For these reasons and others, NG&G terminated its Service Agreements with Service Everywhere effective February 27, 2008. At that point, NG&G had submitted invoices of approximately $1,500,000 to Service Everywhere that were outstanding. Upon information and belief, Service Everywhere had at that time or shortly thereafter billed the Owners for those invoices and subsequently collected from the Owners most if not all of the amounts invoiced. Service Everywhere has retained not only its Profit Interest on those collections, but also NG&G's profit share and the amounts needed to pay the vendors who performed the work.

NG&G and Service Everywhere continued to discuss the outstanding Net Payments due to NG&G. NG&G became increasingly concerned that Service

True Copy Attest
Office of Clerk of Superior Court
Counties of Providence & Bristol
Providence, Rhode Island

Everywhere was experiencing financial issues and that payments due and owing to NG&G and its vendors were being diverted by Service Everywhere to other purposes.

In early 2008, NG&G proposed that while the parties worked to resolve their issues, Service Everywhere place the Net Payments in escrow. Under the proposal, Service Everywhere would retain its Profit Interest. NG&G made this proposal to ensure that the Net Payments amounts (1) would not be diverted or misapplied by Service Everywhere and (2) would be beyond the reach of Service Everywhere's creditors. The proposal was both reasonable and fair because Service Everywhere was not entitled to retain amounts beyond the Service Everywhere Profit Interest.

In or about March 2008 NG&G and Service Everywhere reached an agreement (the "2008 Agreement") that Service Everywhere would provide weekly reports of collections on outstanding invoices from Owners and that Service Everywhere would make weekly wires of the Net Payments collected to a client funds account maintained by NG&G's counsel (the "Designated Account"). Service Everywhere made four wires totaling $635,936.57 into the Designated Account pursuant to the 2008 Agreement. The last wire was made by Service Everywhere on April 2, 2008. As of the date of this filing, the last report provided by Service Everywhere to NG&G reflected that Service Everywhere has made collections from Owners through March 31, 2008 of approximately $1.4 Million on work subject to the Service Agreements and the 2008 Agreement. Notwithstanding these collections, Service Everywhere has only placed $635,936.57 into the Designated Account. Upon information and belief, other amounts subject to the parties' Service Agreements and 2008 Agreement have been collected by Service Everywhere.

True Copy Attest
Office of Clerk of Superior Court
Counties of Providence & Bristol
Providence, Rhode Island

**ARGUMENT**

This Court is well familiar with the requirements for injunctive relief under Rhode Island law: (1) the likelihood of success on the merits; (2) irreparable harm; (3) the balance of the equities; and (4) the need to preserve the status quo. *Leone v. Town of New Shoreham*, 534 A.2d 871, 873 (R.I. 1987). Under the first prong of this test, a plaintiff needs only show a "reasonable probability rather than a certainty of ultimate success on a final hearing." *Coolbeth v. Berberian*, 112 R.I. 558, 556, 313 A.2d 656, 660 (1974). In this case, there is more than a probability of NG&G's success. It is undisputed that Service Everywhere owes money to NG&G. Service Everywhere has collected and retained payments for work under circumstances where it has a contractual obligation to release all amounts beyond its profit interest to NG&G. Earlier this year, Service Everywhere agreed to put the amounts owed to NG&G into an escrow account pending resolution of the issues between the parties. Service Everywhere made several payments into that account pursuant to the parties' agreement, but then ceased doing so. All that NG&G seeks in this motion is to require Service Everywhere to continue to deposit the amounts at issue into escrow while this case is pending.

The need for the escrow is also undisputed. Service Everywhere has acknowledged to NG&G that it is experiencing financial problems. Those problems caused, in part, the substantial delays in Service Everywhere's payments to NG&G. NG&G believes that Service Everywhere has been using the funds it has collected to pay other business expenses and, therefore, that the funds will not be available to pay a judgment in this case. In light of Service Everywhere's admitted financial difficulties,

True Copy Attest
Office of Clerk of Superior Court
Counties of Providence & Bristol
Providence, Rhode Island

NG&G faces irreparable harm if the amounts in dispute are not protected in an escrow account.

The balance of the equities test favors the relief sought. Service Everywhere has no right or even a legitimate argument that it is entitled to retain from collections anything other than the Service Everywhere Profit Interest. On the other hand, NG&G is entitled to the balance of the collected funds (referred to herein as the "Net Payments"). NG&G's request to escrow the Net Payments pending this action appropriately balances the equities of the situation by protecting NG&G without prejudicing Service Everywhere in any way. The equity of the escrow is further supported by the fact that Service Everywhere previously agreed to the escrow and made several payments into the designated account. But recently it stopped, which prompted NG&G to file this action and to seek this injunctive relief.

Finally, as stated above, the relief sought will preserve the status quo. Prior to this suit being filed, Service Everywhere was depositing the Net Payments from collections into a designated account pursuant to the parties' agreement to escrow those funds. The injunction sought will reinstate that agreement, thereby preserving the status quo among the parties prior to the suit.

## CONCLUSION

For the foregoing reasons, NG&G requests the entry of an Order requiring Service Everywhere, (1) to transfer into the designated escrow account all Net Payments that Service Everywhere has to date received from Owners for work performed or arranged by NG&G, to the extent such Net Payments have not previously been forwarded to NG&G or the designated escrow account; and (2) during the pendency of this action or

True Copy Attest
Office of Clerk of Superior Court
Counties of Providence & Bristol
Providence, Rhode Island

until further Order of this Court, (a) to provide a weekly accounting of Net Payments received from Owners; and (b) to transfer weekly into an escrow account all such Net Payments that it receives. Alternatively, NG&G requests that the Court issue a Temporary Restraining Order enjoining Service Everywhere, its officers, agents, servants, employees and attorneys, and those persons in active concert or participation with them, from spending, transferring, alienating or otherwise disposing of Net Payments it receives for work performed or arranged by NG&G

**PLAINTIFF**

**NATIONAL GLASS & GATE SERVICE, INC.**

By ______________________

Stacey P. Nakasian (#5069)
snakasian@duffysweeney.com
Duffy Sweeney & Scott, Ltd.
One Turks Head Place, Suite 1200
Providence, RI 02903
(401) 455-0700 – Phone
(401) 455-0701 – Fax

Dated: May 12, 2008

True Copy Attest

Office of Clerk of Superior Court
Counties of Providence & Bristol
Providence, Rhode Island