# EXHIBIT A

COPY

# SERVICES AGREEMENT

This Services Agreement (the "Agreement") is effective as of July 1, 2004, between Service Everywhere, L.L.C., a Delaware company (sometimes called "Company" or "Contractor"), and National Glass & Gate Service, Inc., a Rhode Island Corporation doing business as NG&G Facility Services International, Inc. and having an office a 263 Jenckes Hill Road, Lincoln, Rhode Island 02865, ("NG&G")

The Company is the Contractor under the Master Contractor - Vendor Agreement (the "Contract") between Trammell Crow Services, Inc. (hereinafter called "Owner") and the Company, dated August 1, 2004, for Bank of America's locations stipulated in the contract (the "Project"). NG&G has agreed to furnish, in conjunction with Service Everywhere, necessary labor, equipment, services, supplies, and other incidental services necessary to perform Call Center Support and Vendor Management Support for services under the Contract. This Agreement sets forth the terms and conditions pursuant to which the Company will engage NG&G's service.

<u>Agreement</u>

The parties agree as follows:

1. *<u>National Services</u>*. The Company engages NG&G to provide the services described on any mutually signed Statement of Work attached to this Agreement as <u>Exhibit A</u> ("Statement of Work"). For any work that is included in the Statement of Work, NG&G agrees to be bound by the applicable provisions of the Contract and General Conditions between the Owner, and the Company, including any specifications therein (collectively called the "Contract Documents"), and amendments thereto, and any requirements of the Manager. The Company has provided to NG&G a complete copy of all of the Contract Documents and agrees to furnish in writing to NG&G any additional requirements of the Manager as now known or shall hereinafter be specified. NG&G agrees to assume toward the Company all of the obligations and responsibilities that the Company by the Contract Documents assumes toward the Owner, insofar as they are applicable to the work to be performed under this Services Agreement.

2. *<u>Warranty</u>*. NG&G shall warrant its work in accordance with the terms of the Contract Documents, or if no warranty is called for during the term of the Project, NG&G shall perform all work in accordance with the Contract Documents, the instructions of the Company and Manger, and in a workmanlike manner. The work to be performed under this Agreement shall be commenced immediately upon notice from the Company. NG&G will provide the required manpower, materials, associated submittals and equipment to comply with the Contract Documents and to assure that the Call Center and Vendor Management Support Center is being properly run

throughout the term of the Contract. NG&G shall complete the work undertaken pursuant to the Statement of Work in a prompt and workmanlike manner and shall not, by delay or otherwise, interfere with or hinder the work of the Company or subcontractors retained by the Company. NG&G shall be responsible for proper coordination of its services with that of the Company and such subcontractors and shall be available, or have representatives available, upon reasonable prior notice, at project meetings and at other times as necessary to assist with this coordination.

3. *Compensation*. Company will compensate NG&G pursuant to the terms of Exhibit B.

4. *Term*. The term of this Agreement shall begin on the above date, and, subject to earlier termination as provided below, terminate concurrently with the Contract.

5. *Termination*.

a. A party shall have the right to terminate this Agreement at any time by notice in writing to the other party upon any of the following events:

i. If the other party commits a material breach of any of the terms of this Agreement and does not, within thirty (30) days of receipt of notice of the breach (if the same be capable of remedy), remedy such breach or in the event such breach cannot be remedied within 30 days, make a good faith effort to cure such breach within such 30 day period; provided however, that nothing herein stated to the contrary shall prevent either party, after a 24 hour electronically transmitted notice of said such material breach or emergency, to secure alternate services, to remedy said breach in the interest of continuing service delivery to customer; or

ii. If the other party shall make an assignment for the benefit of creditors, admits its insolvency, is adjudicated bankrupt or insolvent by any court of competent jurisdiction, any trustee or receiver is appointed for it or for any of its property, or such party files any involuntary petition under any bankruptcy or similar law providing for its reorganization, dissolution, liquidation or winding-up.

b. Termination of this Agreement shall be without prejudice to any rights of either party against the other which may have accrued up to the date of such termination, including the right to pursue injunctive relief.

c. In particular, termination of this Agreement for any reason shall not bring to an end the rights and obligations of the parties for commitments prior to

termination and under Sections 6, 7 8 and 9, each of which shall survive any termination of this Agreement.

6. *Ownership*. NG&G will remain the owner of all copyrights, patents, designs, inventions, technology and ideas created or associated with the services provided by NG&G pursuant to this Agreement or any Statement of Work (collectively, "Proprietary Rights"). The Company has no right, title or interest in the Proprietary Rights, and the Company agrees to execute any documents and take any other actions that Company may reasonably consider necessary and desirable to protect NG&G's ownership of the Proprietary Rights.

7. *Confidentiality*. Each party may be given access to confidential or proprietary information of the other ("Proprietary Information"). The parties each agree to maintain in confidence the Proprietary Information of the other with the same standard of care which the receiving party uses to safeguard its own proprietary information, but in no event less than reasonable care, if the Proprietary Information is furnished on a confidential basis and marked or identified as confidential or proprietary when first disclosed. The obligations in this Section will not apply to any Proprietary Information which (i) is or becomes available to the public other than by breach of this Agreement by the receiving party, (ii) is rightfully received by the receiving party from a third party without confidentiality limitations, (iii) is independently developed by the receiving party, or (iv) is known to the receiving party without any restriction as to use or disclosure prior to first receipt of same from the disclosing party.

8. *Non-Solicitation*. During the term of this Agreement, and for a period of one (1) year thereafter, unless otherwise agreed by the parties in writing, each party agrees not to employ, retain, or solicit the employment or retention as a contractor of any employee or contractor retained by the other party, whether or not such person was involved with the services provided pursuant to this Agreement.

9. *Indemnity*. NG&G agrees to indemnify and hold harmless the Company from any and all loss of damage, including personal injury and property damage, and expenses, including attorney fees and litigation expenses, including expert fees which may arise directly or indirectly from the performance or failure of performance by NG&G of its obligations under this Agreement and those occasioned wholly or in part by any intentional or negligent act or omission of NG&G or that of anyone directly or indirectly employed by NG&G or performing work or supplying services or materials at the request of or under the direction of NG&G . NG&G agrees to promptly pay when due for all labor, equipment, materials and supplies used or consumed in completing this Agreement and to indemnify and hold harmless the Company from any claim, lien, judgment, court costs and expenses, including attorneys fees, and

litigation expenses, including expert fees, incurred on account of NG&G's failure to comply with the terms of this Agreement. The Company agrees to indemnify and hold harmless NG&G of any and all loss or damage that may arise directly from the failure of performance of the Company of its obligations under this agreement.

10. *Option to Purchase*. Upon a proposed change in ownership of either the Company or NG&G, whether by sale of substantially all assets, merger or transfer of voting control whereby at least 50% of the outstanding voting securities of either party shall be transferred in a single transaction or a series of transactions, or the proposed transfer or assignment of the rights and obligations of either party with respect to this Contract, the other party shall have the first right of refusal to retain the business which is the subject of this contract on terms consistent herewith for the remainder of the term of this contract.

11. *Right to Participate in Additional Contracts*. The Company hereby further agrees to first offer to NG&G the opportunity to perform services, other than janitorial services, for the term of the– Bank of America contract provided this agreement is still in effect.

12. *Assignment*. NG&G agrees not to assign this Services Agreement without the prior written consent of the Company which consent shall not be unreasonably withheld.

13. *Insurance.* NG&G shall maintain Worker's Compensation, contractual liability, public liability, and such other insurance in such amounts as may be required of the Company in the Contract Documents between the Owner and the Company during the term of this Agreement. The Company will notify NG&G of such insurance requirements, but in no event will NG&G maintain less than: Commercial General Liability of $1,000,000 each occurrence and $1,000,000 general aggregate (including coverage for Products & Completed Operations and Personal Injury & Advertising Injury), and Employers' Liability of $1,000,000 Combined Single Limit. Within 10 days after the signing of this Agreement, and prior to commencing with the work hereunder, NG&G shall obtain the required insurance from a responsible insurer, and shall furnish certificates of such insurance to the Company, which shall provide for thirty days notice to the Company before cancellation. Similarly, the Company, if requested by NG&G, shall furnish satisfactory evidence of insurance required by the Contract Documents. The Company and NG&G waive all rights against each other and against the Owner, the Manager and all other subcontractors, to the extent permissible under their respective and appropriate policies of insurance, including damages caused by fire or other perils to the extent covered by property insurance, except such rights as they may have to the proceeds of such insurance.

14. *Relationship*. NG&G will perform its services pursuant to this Agreement as an independent contractor, and in no event will NG&G or any of its agents or employees be construed to be an agent or employee of Company. In no event shall this Agreement be interpreted as creating a joint venture, franchise, or partnership. If any provision or combination of provisions in this Agreement is found by a court or government agency to create a franchise relationship, the parties agree that the provision or provisions shall be severed, retroactive to the date of creation of this Agreement.

15. *Injunctive Relief*. The parties agree that it would be difficult to measure damage to from any breach of this Agreement and that monetary damages may be an inadequate remedy. Accordingly, the parties agree that if either party breaches or take any steps preliminary to breaching this Agreement, the other party may be entitled, in addition to all other remedies it may have at law or in equity, to an injunction or other appropriate orders to restrain any such breach, without showing or proving any actual damages.

16. *Notices*. Any notice required or permitted to be given under this Agreement will be sufficient if in writing and personally delivered or sent by first-class or overnight mail to the address set forth on the last page of this Agreement. Either party may, by notice in writing to the other party, change the address to which notices to that party are to be given.

17. *Damages*. National will not be liable for any loss, damage, detention, delay or failure to perform in whole or in part, resulting from causes beyond its control. Under no circumstances shall either party be liable for any consequential, incidental, indirect, or special damages whatsoever, including but not limited to lost profits, with respect to claims made under this Agreement.

18. *Waiver*. The waiver by one party of the breach of any provision of this Agreement by the other party will not operate or be construed as a waiver of any subsequent breach by that party.

19. *Modification*. No amendment, modification or discharge of this Agreement will be valid unless it is in writing and duly executed by the party to be charged therewith.

20. *Construction*. This Agreement will be construed in accordance with and governed by the laws of the State of Delaware (without regard to its conflict of laws provisions).

21. *Severability*. The invalidity or unenforceability of any provision in this Agreement will in no way affect the validity or enforceability of any other provision.

22. *Assignment*. The rights and obligations of this Agreement may not be assigned by either party without the prior written consent of the other party. This Agreement will inure to and be binding on the parties, and their successors and assigns.

23. *Entire Agreement*. This Agreement is the entire agreement between the parties and supersedes any and all prior agreements and understandings between the parties.

24. *Attorney Fees/Venue*. Any suit or action to interpret or enforce this Agreement or with respect to this Agreement must be filed in Delaware, Md., if jurisdiction exists, and the prevailing party will be reimbursed by the non-prevailing party for all attorney fees, costs and expenses incurred in connection with the suit or action, at trial or on appeal.

25. *Counterparts*. This Agreement may be executed in two or more counterparts, each of which will be deemed an original, but all of which together will constitute one and the same instrument.

Executed and effective as of the date first above written.

NG&G:

NATIONAL GLASS & GATE SERVICE, INC.

By: Charles J. Vachon
Name: Charles J. Vachon
Title: President

COMPANY:

SERVICE EVERYWHERE, LLC

By: ______
Name: Sherra Aguirre
Title: President