**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| **NATIONAL GLASS & GATE SERVICE, INC. d/b/a NG&G FACILITY SERVICES INTERNATIONAL, INC.** | |
| **Plaintiff** | |
| **v.** | **C.A. NO: 08-186/S** |
| **SERVICE EVERYWHERE, LLC** **Defendant** | |

# CONSENT ORDER

The following Order is hereby entered by the Court with the consent of Plaintiff, National Glass & Gate Service, Inc., d/b/a NG&G Facility Services International, Inc. ("NG&G"), and Defendant, Service Everywhere, LLC ("Service") in order to resolve the disputes pending between them in this action. The parties agree that this action relates to certain customer receivables, which said amount the parties agree totals approximately $2,037,903.00 (the "Receivables"), and the associated vendor payments that are identified in two (2) separate spreadsheets developed cooperatively by the parties in the course of their settlement dialogue, and referred to herein as the so-called Collections Spreadsheet and the Receivables Spreadsheet, respectively. The Collections Spreadsheet identifies the collections that Service represents it has made through May 12, 2008, on the Receivables. The Receivables Spreadsheet details the amounts that Service represents it has invoiced, but not yet collected from its customers relative to the Receivables. The parties have agreed on the documents that constitute the Receivables and Collections Spreadsheets. The parties have each represented on the subject spreadsheets the respective vendor payments and/or other cost-related information reflecting payments that they

have made in connection with the work done. Separately, Service has identified for NG&G additional collections that it has made between May 12 and June 27, 2008, and those collections are included in the calculation of payments for purposes of Sections I and II of this Consent Order. Each party is expressly relying on the other's representations regarding vendor payments and collections in agreeing to the terms of this Consent Order.

## I. Payments to NG&G

1. Upon entry of this Consent Order, NG&G shall be entitled to withdraw the $732,697.00 that Service previously wired into NG&G's counsel's client funds account.

2. Service shall pay NG&G an additional $54,786.50. Said payment includes, among other things, reimbursement to NG&G for vendor payments previously advanced by NG&G relative to vendor invoices indicated on the Collections Spreadsheet, as well as NG&G's so-called profit interest thereon. Such payment shall be made as follows: within 24 hours of the entry of this Order (a) Service shall cause its attorney, Jay Dushkin, to wire to an account designated by NG&G the $44,737.11 that he is holding in escrow for purposes of this matter; and (b) Service shall wire transfer to an account designated by NG&G the amount of $10,049.39.

3. On or before August 5, 2008, Service shall pay all unpaid vendor invoices relative to the customer invoices listed on the Collections Spreadsheet and the additional collections Service has made through June 27, 2008.

4. NG&G claims an additional amount owed of $57,479.00, which represents Service's fifty-one percent (51%) share of costs associated with certain invoices identified in a spreadsheet provided to Service. Within fourteen (14) days of the entry of this Consent Order, NG&G shall provide to Service the following documentation for each job included in the $57,479.00: the customer invoice, the vendor invoice, the work order, NG&G's cancelled check and check register reflecting its payment to the vendor that performed the work. Within seven (7) days of receiving the documentation, Service shall pay to NG&G its fifty-one percent (51%) share of the costs reflected in the documentation. If Service believes that the above documentation provided by NG&G is insufficient, it shall pay the amount for which it agrees sufficient documentation has been provided, and the parties shall make their best efforts to resolve the remaining amount.

5. Service shall pay in full all unpaid vendor invoices listed on the Receivables Spreadsheet, as well as reimburse NG&G for vendor and other cost payments previously advanced and NG&G's so-called profit interest in connection

therewith, as appropriate, pursuant to the procedures set forth in Section II of this Consent Order.

## II. Procedures Associated with Collections of Amount on Receivable Spreadsheet

1. As of the date of entry of this Consent Order, Service shall immediately deposit into a special, segregated bank account (the "Collections Account") all amounts it has collected or in the future collects on the customer receivables listed on the Receivables Spreadsheet. Said Collections Account shall be maintained by Service's counsel, unless the parties agree otherwise.

2. By noon of each Monday following the entry of the Consent Order, Service will provide NG&G with the following: (a) an updated Receivables Spreadsheet identifying the customer invoices collected and the date of each collection and the vendor payments made by Service and the date of each payment; and (b) an accounting of all amounts deposited into and paid out of the Collections Account.

3. On an invoice-by-invoice basis, all funds received per invoice reflected on the Collections Account are to be paid out each Friday following the entry of this Consent Order in the manner and priority set forth below:

   (a) Before any other payments are made, Service shall pay all unpaid vendor invoices as reflected on the Receivables Spreadsheet relative to the customer invoices collected on a per invoice basis.

   (b) After the above-referenced payment(s), Service shall reimburse NG&G for any vendor and other cost payment(s) made by NG&G as reflected on the Receivables Spreadsheet relative to the customer invoice(s) collected.

   (c) After payment(s) in full as described in Subparagraphs a and b, respectively, above, the remaining funds relative to the customer invoices collected shall be applied to pay the so-called profit interest split between Service and NG&G, with said amount(s) being distributed fifty-one percent (51%) to Service and forty-nine percent (49%) to NG&G.

4. Service and NG&G acknowledge that certain of the Receivables on the Receivables Spreadsheet may be uncollectable. Notwithstanding, Service and NG&G hereby agree to work cooperatively and use best efforts to secure payment with respect to any and all invoices reflected on the Receivables Spreadsheet. To the extent that Service and NG&G are unsuccessful in their efforts to collect upon said invoices, Service and NG&G agree to share the costs associated with any unpaid vendor payments relative to uncollected invoices, with Service paying fifty-one percent (51%) of the same and NG&G paying forty-nine percent (49%).

5. Service and NG&G agree that to the extent certain Receivables, despite the parties' best efforts, are not collected within twelve (12) months following the entry of this Consent Order, said Receivables shall be deemed uncollectable and will be "written off" by the parties. In the event that any unpaid vendor invoices remain with respect to any such Receivables, Service and NG&G shall pay the same in accord with Section II, Paragraph 4 above.

## III. <u>Sale Tax Issue</u>

1. Service maintains that it overpaid NG&G certain amounts on sales tax. Contemporaneous with the entry of this Consent Order, Service will furnish NG&G with the required documentation regarding the alleged overpayment. Within seven (7) days after receiving that documentation NG&G shall pay to Service any amounts the documents establish are due and owing to Service. If NG&G believes that certain of the documentation provided by Service is insufficient, it shall pay the amount for which it agrees sufficient documentation has been provided, and the parties shall work cooperatively and use best efforts to resolve the remaining amount.

2. The amount Service previously escrowed with its counsel relative to this issue ($44,737.00) may be released to Service upon entry of this Consent Order, subject to the provisions of Section I, Paragraph 2 above.

## IV. <u>Other Terms</u>

1. Service and NG&G are also parties to a Limited Use Loan Agreement ("LULA"), which was entered into on or about February 23, 2005, and which was terminated effective February 27, 2008. Nothing in this Consent Order is intended to modify the terms and conditions that survive the termination of the LULA. In reaching the agreement to enter this Consent Order, the parties make the following representations:

    (i) During the time of the effect of the LULA, Service complied with the terms of the LULA and made no use of the Computer System (as that term is defined in the LULA) except as authorized by the LULA.

    (ii) Subsequent to the termination of the LULA, Service has not and will not make use of the Computer System or violate surviving terms of the LULA.

    (iii) Pursuant to the non-solicitation provisions of the LULA, and various Services Agreements, whether written or otherwise, Service is prohibited from using NG&G's business information, including its vendor invoices, database, and/or other records shared with Service pursuant to the parties' prior business relationship, for work performed by Service that does not involve NG&G. However, NG&G agrees that Service shall be entitled to engage a vendor/contractor (a) that is identified on any customer/client

supplied list of "incumbent vendors", or otherwise expressly identified to Service by a customer/client, or (b) that Service located independently without reference to NG&G's information, including, but not limited to, vendors that Service has identified and/or will identify using the database that it obtained from a third party so long as those vendors/contractors are identified without reference to NG&G's information. An "incumbent vendor" is a vendor identified by any customer/client of Service as a preferred vendor/contractor by that customer/client. Service has provided NG&G with copies of so-called lists and/or documents identifying "incumbent vendors," and the parties are in agreement that the vendors /contractors reflected in said documents shall constitute "incumbent vendors" that Service may engage or retain as that term is used in this Consent Order.

2. Service and NG&G will hold each other harmless against all claims, demands, actions, issues or expenses, including without limitation any and all attorneys' fees and court costs, arising out of, relating to and/or concerning any claim for failure to pay a vendor payment or sales tax payment(s) to the extent that the payment was one that the indemnifying party represented as having paid and/or was required to pay by this Consent Order.

3. Service and NG&G shall not, in any respect, make, disseminate, publish, communicate and/or otherwise transmit commercially disparaging statements, remarks and/or comments with respect to each other.

4. Upon the entry of the within Consent Order, and except as expressly provided herein, and in exchange and consideration of the good and valuable consideration set forth and described herein, the receipt and sufficiency of which is hereby acknowledged, NG&G and its affiliates, aliases, subsidiaries, divisions, parents, officers, directors, shareholders, limited liability companies, successors-in-interest, successors-in-assigns, representatives, and agents, release, quit and forever discharge, Service, and its affiliates, aliases, subsidiaries, divisions, parents, officers, directors, shareholders, limited liability companies, successors-in-interest, successors-in-assigns, representatives and agents, both present and former, of and from any and all manner of action and actions, cause and causes of action, warranties, suits, debts, controversies, demands, judgments, executions, liens, dues, sums of money, accounts, reckonings, covenants, contracts, agreements, promises, doings, omissions, damages, expenses, liabilities, claims and demands whatsoever, whether asserted or unasserted, in contract, tort, at law or in equity, which NG &G ever had, now has or in the future may have upon or by reason of any matter, cause, causes or things, occurring prior to the date of entry of this Consent Order whether or not suspected, contemplated or anticipated whatsoever, including without limitation any and all claims, causes and/or that are the subject matter of NG&G's Complaint in the instant matter, as well as any claims, causes and/or causes of action arising out of, relating to or in connection with those certain Services Agreements, dated January 1, 2002, and

July 1, 2004, respectively, and any other oral services agreements entered into by and between NG&G and Service. Nothing in the foregoing is intended to or shall operate to release Service from claims related to any of the following: (1) the contractual obligations and agreements set forth in (a) Paragraphs 6, 7, 8 and 9 of the above-mentioned Service Agreements and (b) the LULA (as referenced in Section IV, Paragraph 1 above); (2) claims for enforcement of this Consent Order; (3) claims resulting from Service's failure to accurately report its collections or its vendor and other cost payments on the Receivables and Collections Spreadsheets; and (4) any claim for indemnification or contribution arising out of a third-party claim asserted against NG&G which NG&G would otherwise have a claim for indemnification or contribution from Service under applicable law, including but not limited to, any claim for indemnification pursuant to Section IV, Paragraph 2 above.

5. Upon entry of the within Consent Order, and except as expressly provided herein, and in exchange and consideration of the good and valuable consideration set forth and described herein, the receipt and sufficiency of which is hereby acknowledged, Service, and its affiliates, aliases, subsidiaries, divisions, parents, officers, directors, shareholders, limited liability companies, successors-in-interest, successors-in-assigns, representatives and agents, release, quit and forever discharge, NG&G, and its affiliates, aliases, subsidiaries, divisions, parents, officers, directors, shareholders, limited liability companies, successors-in-interest, successors-in-assigns, representatives and agents, both present and former, of and from any and all manner of action and actions, cause and causes of action, warranties, suits, debts, controversies, demands, judgments, executions, liens, dues, sums of money, accounts, reckonings, covenants, contracts, agreements, promises, doings, omissions, damages, expenses, liabilities, claims and demands whatsoever, whether asserted or unasserted, in contract, tort, at law or in equity, which Service ever had, now has or in the future may have upon or by reason of any matter, cause, causes or things, occurring prior to the date of entry of this Consent Order whether or not suspected, contemplated or anticipated whatsoever, including without limitation any and all claims, causes and/or causes of actions that are the subject matter of NG&G's Complaint into the instant matter, as well as any claims, causes and/or causes of action arising out of, relating to or in connection with those certain Services Agreements, dated January 1, 2002 and July 1, 2004, respectively, and any other oral services agreements entered into by and between NG&G and Service. Nothing in the foregoing is intended to or shall operate to release NG&G from claims related to any of the following: (1) the contractual obligations and agreements set forth in Paragraphs 6, 7, 8 and 9 of the above-mentioned Service Agreements; (2) claims for enforcement of this Consent Order; (3) claims resulting from NG&G's failure to accurately report its vendor and other cost payments on the Receivables and Collections Spreadsheets; and (4) any claim for indemnification or contribution arising out of a third-party claim asserted against Service which Service would otherwise have a claim for indemnification or contribution from NG&G under

applicable law, including, but not limited to, any claim for indemnification pursuant to Section IV, Paragraph 2 above.

6. Within fourteen (14) days of the entry of this Consent Order, Service shall provide NG&G with a detailed list of documents, records, information, materials and/or items relative to work reflected on the Receivables and Collections Spreadsheets. Service's requests shall be limited to documents that it reasonably needs for purposes of its business. Within thirty (30) days of receiving Service's list, NG&G shall turn over and provide said documents, records, information, materials and/or items to Service, to the extent such documentation has not previously been provided by NG&G to Service. If in the future, Service requires documentation from NG&G regarding other work the parties performed together, NG&G shall use its best efforts to provide all documentation reasonably requested by Service.

7. Any action by either party to enforce this Consent Order shall be brought in this Court, and both parties consent to the jurisdiction of this Court for purposes of such an action.

8. NG&G's Complaint, and the above-identified action against Service shall be dismissed, with prejudice. All rights of appeal are hereby waived.

9. Each party shall bear its own costs and expenses in connection herewith, including without limitation any and all attorneys' fees.

Entered as an Order of this Court this 31st day of July, 2008.

AGREED, CONSENTED & STIPULATED TO:

National Glass & Gate Service, Inc.
d/b/a NG&G Facility Services International, Inc.

By its Attorneys

/s/ Stacey P. Nakasian
Stacey P. Nakasian (#5069)
**Duffy, Sweeney & Scott, Ltd.**
One Turks Head Place, Suite 1200
Providence, RI 02903
Tel: (401) 455-0700
Fax: (401)455-0701
Email: snakasian@duffysweeney.com

Service Everywhere, LLC

By its Attorneys,

/s/ Christopher M. Mulhearn
Christopher M. Mulhearn (#5188)
**Ferucci Russo, P.C.**
55 Pine Street, Fourth Floor
Providence, RI 02903
Tel: (401) 455-1000
Fax: (401) 455-7778
Email: cmulhearn@frlawri.com

ORDER:

Smith, J.

ENTER: