UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| NATIONAL GLASS & GATE SERVICE, INC. | : | |
| | : | |
| v. | : | C.A. No. 08-186S |
| | : | |
| SERVICE EVERYWHERE, LLC | : | |

**REPORT AND RECOMMENDATION**

Lincoln D. Almond, United States Magistrate Judge

Pending before me for a report and recommended disposition (28 U.S.C. § 636(b)(1)(B); LR Cv 72) is Plaintiff's Motion to Adjudge Defendant in Contempt. (Document No. 25). Defendant objects. (Document No. 27). A hearing was held on September 21, 2009. For the following reasons, I recommend that Plaintiff's Motion be GRANTED.

**Background**

The travel of this case is somewhat complicated and is adequately summarized for these purposes in the parties' briefs and on the Court's docket. By way of a Consent Order entered by the Court on July 31, 2008, the parties purportedly settled their differences. (Document No. 14). The main area of contention was a body of customer accounts receivables to which both parties had claims. The Consent Order provided a framework for collecting and distributing these receivables. In a nutshell, the net receivables (after payment of any unpaid, related vendor invoices) were split 51% to Defendant and 49% to Plaintiff. It appears that Defendant "possessed" the receivables and took the lead on collections. On a weekly basis, Defendant was

required to provide Plaintiff with an update on collections and an accounting of amounts deposited into a segregated Collections Account set up to disburse the collections.

**Discussion**

Plaintiff alleges that Defendant violated the Consent Order by failing to provide the weekly collection reports. It is undisputed that Defendant ceased providing the weekly reports to Plaintiff after April 22, 2009. Thus, Plaintiff has proven by clear and convincing evidence that Defendant has violated a material term of the Consent Order.

In its Memorandum in Support of its Objection, Defendant claims that it is "wholly without the ability to further perform under the [Consent] Order." (Document No. 28 at pp. 1-2). As support, Defendant's counsel indicates that Defendant ceased operations in February and that its secured commercial lender, Unity Bank, called a line of credit and foreclosed its security interest in certain assets of Defendant, including the receivables in issue.[1]

Plaintiff here seeks an Order of Civil Contempt. Civil contempt is not imposed to punish noncompliance but rather is a mechanism to compel compliance and/or to compensate a party harmed by noncompliance. McComb v. Jacksonville Paper Co., 336 U.S. 187, 191 (1949) ("Civil as distinguished from criminal contempt is a sanction to enforce compliance with an order of the Court or to compensate for losses or damages sustained by reason of noncompliance."). "To establish civil contempt, a complainant must show by clear and convincing evidence that a specific order of the Court has been violated." Devine v. State of

---

[1] Defendant's counsel represented at the hearing that the security interest was granted prior to July 31, 2008 (the date the Consent Order was entered by the Court) and pointed out that the Consent Order contains no representations or warranties as to the absence of any security interest granted in the receivables.

Rhode Island, 827 F. Supp. 852, 863 (D.R.I. 1993) (citation omitted).  Additionally, the Court "must make a four-part inquiry: (1) whether the alleged contemnor had notice of the order; (2) whether the order was 'clear and unambiguous'; (3) whether the 'alleged contemnor had the ability to comply' with the order; and (4) whether the alleged contemnor violated the order."  Carlow v. Mruk, C.A. No. 02-538ML, 2006 WL 858080, *1 (D.R.I. March 23, 2006) (quoting United States v. Saccoccia, 433 F.3d 19, 27 (1st Cir. 2005)).  In other words, "[f]or a party to be held in contempt, it must have violated a clear and unambiguous order that left no reasonable doubt as to what behavior was expected and who was expected to behave in the indicated fashion."  Project B.A.S.I.C. v. Kemp, 947 F.2d 11, 17 (1st Cir. 1991).

Defendant attempts to argue legal impossibility but provides no evidentiary basis for such a finding.  Defendant does not contend that it is in bankruptcy or receivership.  Further, Defendant has offered absolutely no evidence (no testimony, exhibits or affidavits) to support counsel's representations that Defendant has ceased operations and has lost control over the receivables. Even if the Court accepts all of Defendant's unsupported assertions as fact, they do not necessarily render Defendant unable to comply with the Consent Order.  The Consent Order simply requires weekly reports.  In fact, Defendant's counsel apparently provided an updated report to Plaintiff's counsel on the eve of the hearing which simply confirms the lack of collection activity.[2]

There is no evidence that Defendant formally notified Plaintiff that it was ceasing operations and would be discontinuing the weekly reports under the Consent Order.  Plaintiff

---

[2] A copy was not presented to the Court.

indicates that it learned from a vendor that Defendant had ceased operations. (Document No. 25-2 at p. 7). In particular, the vendor forwarded to Plaintiff a letter it had received from a Texas lawyer retained by Defendant "to assist with the liquidation of its entire operation." (Document No. 25-4, Plaintiff's Ex. B). There is also no evidence that Defendant or its commercial lender has provided any documentation to Plaintiff which would evidence that the lender had a security interest in the receivables in issue and exercised such security interest. It appears that Defendant wants Plaintiff (and the Court) to accept its unsupported representations that the business is defunct and the lender has "seized" the receivables, and to basically drop the matter.

Plaintiff has shown by clear and convincing evidence that Defendant had notice of the Consent Order and that the Consent Order clearly and unambiguously calls for weekly reporting from Defendant to Plaintiff. (Document No. 14, § II, 2). It is undisputed that Defendant unilaterally discontinued the reports in violation of the Consent Order and has not offered any evidence to support its claim of legal impossibility to perform. While Defendant may well be correct that it had nothing of substance to report since the lender had seized the receivables, that does not excuse continued reporting under the Consent Order. In addition, Defendant has not shown that it did not receive collections updates from the lender or could have received such information if requested.

As a relief for this civil contempt, Plaintiff seeks three remedies. First, an Order adjudging Defendant in contempt and requiring that it resume the weekly reports required by the Consent Order. Second, an Order compelling Defendant to produce the documents requested

by Plaintiff in its First Request for Production of Documents dated May 22, 2009. Finally, an award of its fees and costs associated with bringing this Motion.[3]

I find that these remedies are appropriate with the exception of enforcing Plaintiff's First Request for Production of Documents. The Documents sought by Plaintiff go well beyond the issues raised by Plaintiff in this Motion. They appear to be directed at information which might be used in an effort to undo the Consent Order or to pursue a new action against Defendant or its present or past members, managers, directors or officers. For instance, Plaintiff requests documents showing Defendant's "gross collections, costs, applicable taxes, and [Defendant's] and [Plaintiff's] profit with respect to services rendered by [Plaintiff] and/or its contractors on behalf of [Defendant] since the inception of the [parties'] relationship on or about January 1, 2002, through the present." (Document No. 25-5, Ex. C at Request No. 1). Plaintiff also requests documents showing compensation and all other sums provided by Defendant directly or indirectly to its members, managers, directors and officers. Id. at Request No. 5.

The narrow issue raised by this Motion is simply Defendant's failure to supply the weekly collections update and accounting to Plaintiff. Since this is a civil contempt proceeding, the purpose of imposing sanctions is to compel compliance and to compensate the party harmed by noncompliance. Plaintiff's requests for an order compelling future compliance and for an award of fees and costs serves those purposes. Its request for an Order compelling production of a wide range of documents not directly relevant to the contempt issue does not. Defendant

---

[3] If Defendant had directly communicated with Plaintiff about the decision to discontinue its business operations or the fact that the receivables were pledged as loan collateral, Plaintiff may have pursued options other than moving for contempt. However, Defendant did not do so and unilaterally discontinued the weekly reports which reasonably prompted the instant Motion. Thus, Plaintiff should be made whole with an award of reasonable fees and costs.

should, however, be ordered to produce documents in its possession, custody or control which evidence the commercial loan secured by the receivables, the circumstances of the lender's declaration of default under such loan, the granting of the security interest in the receivables to the lender, the lender's exercise of its security interest in the receivables, the collection efforts and results as to the receivables since April 22, 2009, and the disposition of any such proceeds.

**Conclusion**

For the foregoing reasons, I recommend that Plaintiff's Motion to Adjudge Defendant in Civil Contempt (Document No. 25) be GRANTED. Plaintiff shall prepare and submit a proposed Order consistent with the scope of relief recommended herein to District Judge Smith for his consideration within ten (10) days.

Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of the Court within ten (10) days of its receipt. Fed. R. Civ. P. 72(b); LR Cv 72. Failure to file specific objections in a timely manner constitutes a waiver of the right to review by the District Court and the right to appeal the District Court's decision. United States v. Valencia-Copete, 792 F.2d 4 (1st Cir. 1990).


  /s/ Lincoln D. Almond
LINCOLN D. ALMOND
United States Magistrate Judge
September 24, 2009